Your argument in the first case, Jones v. County of Westchester, and Lisa Collin. Good morning, Mr. Meth. Good morning, Your Honor. May it please the Court, my name is Michael Meth. I represent a 17-year-old young woman named Denise Jones, who is a constituent of this circuit and a citizen here. Your Honors, I respectfully submit to you that the District Court should not have abstained when they decided the 12C motion in this case. Petitioner was not seeking injunctive relief. She was only seeking damages. She wasn't seeking to overturn any lower court decision or opinion. I met this young woman when she was 12 years old, and that was seven years after the appellees met her when she was three years old. Today, at 17 years old, she reads at a pre-K level. She's a pre-K level in math. She has no social skills. She can't count to 10. And as best as anybody can tell, her diagnosis is ADHD and post-traumatic stress disorder. One or the other, or maybe both. Before we get too far down this path, and believe me, I'm sure all of us, I certainly have read your client's circumstances, can we talk about how we got here procedurally? Absolutely. All right. Who's the named party here? The named party is D.J. She's a minor child, and Latonya Jones is her mother, who first contacted me to retain me in 2011. But she's appearing through Ms. Jones? Well, at some point the District Court split up the representation in the council, and myself and another counsel named Jen Rubino were left appointing the child. There was another attorney that substituted in to represent the petitioner mother, the plaintiff mother, and there's a next of friend appointed by the District Court to deal with the child's special education needs on our side. The next friend isn't in front of us? Correct. She's only appointed for special education. Who filed the appeal? We filed the appeal after the plaintiff, D.J., the minor child, D.J., filed the appeal after the District Court judge abstained and didn't allow the case to proceed past 12C. So who speaks as an adult for the child in these proceedings? In these proceedings for the child, myself. Federal court proceedings? Yes. The appeal? The appeal, myself, Michael Meth, and Jennifer Rubino. But the child has been taken away from Ms. Rubino, right? Well, the child is right now currently in New Hampshire in a residential care facility. Under the care and custody, she's in the custody of the county, and she has been, you know, since 2005. Who makes the decisions for the child? The county. So why isn't the county here? They are here. The county is here as an appellee here. This appeal didn't come out of federal court. Why isn't the county here on behalf of the child? Who makes the decisions about her welfare and well-being and, you know, who's authorized to speak for her, she being a minor? In federal court, I've been speaking on behalf of the child. But you're her attorney, so there's attorneys and the client can't be one and the same. I understand your question. All right. So in that particular case, the mother's rights have never been terminated. She still speaks for the child. And it's, you know, right now there was a termination. Okay, I got it. All right. Thank you. I didn't understand. I apologize. No, well, and I wasn't very clear. So proceed, please. This child, Your Honor, first came to our attention by way of a substantive due process case by way of a whistleblower, basically. There was someone that was inside the family court proceedings that was watching these proceedings go down. She worked for CASA, which is a court-appointed special advocate. Her job was to be the liaison between, you know, the care given to this child after she was removed from her family and the court. And this woman, you know, prepared reports, told everybody what was going on. There's documented cognitive decline in this child since they got custody of her. We view this basically, we being the plaintiffs, view this as a Duchenne case, very plain and simple. Once the state took custody of her, they have a minimal duty to provide safety and care for her, not because she needs it. Can I ask you some more procedural questions? Sure. That is, the district court abstaining said that she could raise her constitutional damages claims in the Westchester County Family Court. And I think the county has said that if not, they're in a Rule 78 proceeding. My review of those two areas indicates that's not really true. What's your take on that? Absolutely. It's plaintiff's position that we cannot adjudicate constitutional substantive due process claims in the family court. What's left in the family court for this child's remaining years are permanency hearings under Section 1089 of the Family Court Act. They have very little, they're very limited jurisdiction. They're to find out if the service plan in place is being followed. They're to find out if the care on the needs of the children are being met. And they're to find out what's- Can they award damages at all? They cannot award damages at the family court. I believe under the Judiciary Court Act, under New York State law, is a court of limited jurisdiction. But a Rule 78 proceeding, we hear that a lot. And with an Article 78 proceeding, it's not damages. It's imploring, you know, a higher court to implore a lower court to act. And we're not, so our position is that we're not seeking to review the lower court. We're not seeking to reverse them. We're not seeking to lay any will on top of them. We're seeking damages for what happened to this child from 2003. Procedural questions? Yes. So the district court entered this order in December of last year. Correct. And it might make some sense if you were to do that and have every few months, every month, a conference about what's going on in the permanency hearings. What's the status? When can I revive this case? I haven't seen anything like that in the district court docket. It seems maybe because of the appeal here, but it's curious to me that there hasn't been any more. There was a motion to reconsider, I saw, that was acted on. But I didn't see any, like, status conferences or what's going on in the family court so that now I can lift the stay and we can proceed on the damages action. Have you requested that or what's the status of that? We immediately filed this appeal. This motion sequence, since the decision of the order, has taken, you know, a little over an excess of a year. There's been one permanency hearing in the lower court. It happened in June. There was supposed to be. There's another one tomorrow, isn't there? There was supposed to be. It was supposed to be two weeks. It was adjourned until tomorrow. That's right. What about with the district court? Did somebody say to the district court there's no point in having, you know, some kind of status conference because it's on appeal to the second surrogate now? That was done on its own. We did not say that. As far as I know, nobody took that position affirmatively. It just happened on its own. This appeal, this stay, by abstaining, caused specific irreparable harm to this child, and this is why we came here to ask you to lift the stay. She's now 17 years old. At age 18, she can sign herself out of the foster care system. Between 18 and 21, she can only stay there by consent. This child, by every expert involved in this case, and the couch. We're going to just keep on going, and you've got another two minutes anyway. She's not equipped to go out into society. Like we said before, can't read, can't do math, can't socialize. When she signs herself out at 18, she's either going to end up in the adult care mental health system or she's going to become homeless or the correctional system if she commits a crime. Her family can't take her back. We're not even disputing. This is not a wrongful removal case. We're not disputing that her family, that's why the state took her. And what's happening is this stay, when she was 16, as this stay was being implemented, we had a life care planner, certified registered nurse, who gave a very clear mitigation plan at 16 years old. She said that you could still give this plaintiff, DJ, a chance not to end up in the adult care system. A year has gone by. If Judge Roman's stay lasts until another year or another two years or three years, this child may be in an even more precarious position than she's in now. We feel time is of the essence. How is the damages going to solve that? You want to go back to him for a damages remedy, and it's probably going to take a couple of years to get to the end of that. How is that going to address her immediate problems? We have a life care plan in place that if resources become available or they're willing to consider it, which they're still not because they still believe they're going to win 12C, there's an alternative care plan. That's not the public care system which she's in now, which has so utterly failed to meet her needs and created a situation where they're just not capable to. A private care system which would give so every expert that we know about in this case, which number's five, talks about the number one thing being stabilizing this child's environment as soon as possible and getting her the care she needs and getting the attention she needs that solve her trigger events. By remaining in the care system that she's in now, this child is faced daily with events that she can't cope with. The stay has created a situation where at 16 to 17 years old, very tender years for a child, especially in this situation, she's now being, her only chance is the adult care system, which is coming at her like a freight train. Please give this plaintiff the chance to go back to the district court. So we're done with discovery. We're in summary judgment phase. If you send this case back, we're in summary judgment, and we're picking a jury within a very timely manner. If we win, of course, if we're successful in summary judgment. There's no discovery left to be done. There's no prejudice to them to do it now. But back to, I'm not sure it's directly material to what we're trying to decide here, but back to Judge Droney's question, how does all of that help her with the manifest problems that you've outlined or described for us that are in the record? We're very acutely aware of the time situation and the pressure we're under. We started this case, like we said, in 2011 when the child was much younger. Where we are now, how it helps. In other cases we've been involved in, as the case has progressed towards later, you know, summary judgment and the issues start going down, maybe some of our life care plan will start being integrated into some of the lower court proceedings where they're working. Maybe the case will settle, resolve, or mediate. They change her bargaining position. Because once you have the court equalizing the playing field, then, yeah, exactly. And we have all that information. I mean, all the work has been done. The experts have been, they've done their reports. Everything's there. It's ripe for a fact finder to hear, and we respectfully request the opportunity to do that and not stay it any longer, especially because there's no clear answer. Judge Roman's stay is an indefinite period of time. It could be up until the child turns 21. It could be as soon as next year when she turns 18. And might something occur tomorrow? Not tomorrow. To change any of that? Well, if the case settles and we can get the private care in place that we've been advocating for and that this child's advocates have been advocating for, that could change. For example, I mean, just to get access to this child, we had to get a court order from the district court that said that her counsels are allowed to have unfettered access. That was stayed, I believe, because our only access for a year, you know. The other thing, then, just to leave you with, it's our position that the county at this point has no incentive to even mitigate this child's damages because if they put the life care plan in place that we asked for and she starts getting better, it proves our case. And if they don't do it and she keeps getting worse, it's no win. It's tragic, and we respectfully request the opportunity to, you know, be heard and let the case proceed. Okay. Well, I will. Thanks, Mr. Metheny. You've reserved some time for rebuttal. I'm going to, here, on the record, ask all parties, please, to keep us apprised if anything changes in this calculus as a result of what transpires tomorrow or shortly thereafter, anticipating that we will very quickly try to get you a decision in this matter. But more argument to be heard. So have a seat, and we will hear from your adversaries. Good morning, Your Honors. Good morning. My name is Linda Trenacoste, associate county attorney, appearing on behalf of the county appellees. One of the things that this court has already pointed out is whether or not the appellant here has jurisdiction. It's his burden to show that this court he has appellate jurisdiction and has respectfully submitted that he has not shown that before this court. Aside from that issue, though, the appellant has currently raised two issues in his brief. One is the issue of Younger and the application of Younger by the district court. And the second thing was whether or not the complaint itself, the amended complaint, has alleged a substance-induced process claim to be in federal court itself. We believe that the district court, first of all, the district court applied the Younger analysis in the way that this court has indicated. He went forth. Can I back you up for a second? Yes, Your Honor. Appellate jurisdiction here. Appellate jurisdiction. Yes, Your Honor. It seems to me that the Supreme Court modified the Younger factors a bit in the Sprint case, and it seems to loosen it up a little bit for appellate jurisdiction here. Would you agree with that? Well, Your Honor, actually, my point in connection with this case, and I guess where I differ a little bit from the district court's case in here, is that I believe the district court thought that he could not dismiss the case at all because there were monetary damages being sought. I believe that you don't even get to Younger issue if you make a determination that the complaint in and of itself fails to allege a cause of action, a constitutional cause of action. And that's what our position is in connection with this. That's not what he did. That's not what the district court did. The district court stayed it in light of Younger. So isn't the question then whether, let's assume for a moment appellate jurisdiction, we can turn back to that. But assuming we do have jurisdiction to review that, isn't that the fact of it just having been money damages critical? Is Younger available, Younger abstention available in the context of no injunctive relief? Well, that's actually one of the arguments was that, yes, because it requested monetary damages only, that's why they applied Younger. But what we're trying to say, and I'm not sure if I'm being clear in connection with this. Well, my question is, is it appropriate to apply Younger outside of the context of injunctive relief? I believe it is, Your Honor. That's what this Court has held, that it would not be appropriate to continue with the action where they're requesting monetary damages only, that it wouldn't be right to dismiss that case. Because in family court, we will not be addressing the issue of monetary damages in family court. You're saying it's appropriate to stay under Younger but not appropriate to dismiss. Is that? Solely under Younger, yes. But I guess my argument is you don't even get to the Younger analysis in the first instance, because Plaintiff here has failed to allege a substantive due process claim. The only allegations in this claim -- Did the district court pass on that? It didn't, Your Honor. And that's when the ---- Why should we be taking that up in the first instance? Well, because appellant has brought this case questioning the district court's application of Younger. And if this Court is going into the district court's application of Younger, on the one hand, we say, yes, the district court applied it to the letter of the law. However, if this court were to actually look at Younger, and if you're not getting to Younger, because the appellant has brought this here, then you could dismiss this case in its entirety. And actually, the appellant also argued ---- I'm sorry. My understanding, though, is that Sprint seems to suggest that unless we're going to interfere with the functions of the family court, that we shouldn't abstain, the district court shouldn't abstain. Is that ---- Am I wrong about that? No. And then if ---- Are we going to interfere with the family court at all? I think it is somewhat problematic, though, that the ---- that we have a Federal court action reviewing the actions of the family court. How much problematic is not the test for abstention from Federal jurisdiction? No, that's correct, Your Honor. Sprint gives us the test for abstention from Federal jurisdiction. Absolutely, Your Honor. And Sprint was not discussed in the case below. Absolutely, Your Honor. But by the same token, Your Honor, all the things that appellant is looking for is, one, it's only monetary damages. And that's not a reason not to stay anything. Monetary damages is not an exigent circumstance in connection with this. No, that's correct. But the other thing, though, is that the family court is dealing with one of the issues is whether or not the child is being cared for, the treatment, and that's something that is constantly being reviewed by the family court, constantly being considered by medical experts in connection with this. To have a district court case saying that the family court is not acting appropriately in connection with this child and having money damages assessed against individuals who are providing the information to the family court because they're saying that there's But it's a look-back that's being sought in the damages case. It's a look-back, or what I'm going to call a look-back that's being sought in the damages case. It's not interfering with what the family court may decide tomorrow or whatever day this week it's going to get to it. It's oh, yeah, well, we do need a new plan under all the circumstances. As I understand it, the child through the mother is saying, you guys screwed up, to use the technical term, and we want compensation for that. And then it's up to the district court in the first instance to decide whether that's a compensable substantive due process injury. Well, one of the arguments you just raised, Your Honor, is that it's one of the issues in hindsight almost in what the family court did in connection with this. First, there's never been an appeal of any of the orders with respect to placement, with respect to what's the appropriate treatment of this child, where the child is situated. And, again, it's not to undermine the situation of this child. It's a very difficult case, and it's a very sad case, admittedly so. However, this child in the course of 12 years has been in over eight different medical facilities, anywhere from Stony Brook to Andrews Home to Westchester County Medical Center to all of these different very expertise places dealing with. Now, at the age of five, this child was having visual and auditory hallucinations. And that was at the time that the county received her into care. That's not something that the county has been responsible for. And to go back and say everything that you did in order to try to protect this child has been wrong, never appealed any of these orders to any of the family courts or the appellate courts when we're dealing with this. And, Your Honor, it's more than every six months because it's at least every six months in connection with the way that the family court deals with respect to the treatment. Is this picture going to change any when she turns 18 and is under a different set of regulations, if any, and is an adult and living her life on her own? Well, there's a couple of issues in connection with that, Your Honor. One, we don't know what the decision is going to be, if she's going to want to leave at 18 or if she's going to want to remain until she's 21. Will the family court continue to have jurisdiction over her? If she consents to it, yes, Your Honor. Okay. And then the other thing is that once the child does 21, the county's role in the role that we are in now would cease to exist. Right. So then it would be another state agency dealing with her at that time. Thank you very much. Unless there's any other questions, I rest on my papers. Thank you, Your Honor. Thank you very much. Mr. Martin? Thank you. May it please the Court. William Martin on behalf of the appellee, Lisa Colan, the court-appointed attorney for the child in the family court. In my argument, I cited, I believe, 14 cases of quasi-judicial immunity with respect to the person in Ms. Colan's position. I believe three of those decisions were from you. Why is that something that's raised in the district court rather than with us, your client's immunity? It sounds like a district court argument rather than here. At least in the first instance. Well, it was raised in the first instance. But it wasn't ruled on. Well, what I've asked, in response to the letter brief that you asked for, my request was that you exercise jurisdiction over the appeal. I cited the 28 U.S.C. 1291 sub 2, I believe, for authority that you can exercise jurisdiction to return this case for dismissal. I would ask you to do that. And in support of that request, I would suggest to you that the district court should have dismissed this case, at least with respect to my client, who's only facing State claims on the quasi-judicial immunity argument. And I point out to you that one of the cases I cite, the Northern District and Judge Sudeby, who I think now is the chief judge, said that if not only quasi-judicial immunity, but perhaps absolute immunity, and Judge Kahn's decision that I cite, also the Northern District, said that I know of no contrary case law. So in light of that, Ms. Colan and, quite frankly, the other defendants here, I submit to you, should have the right to a quick ruling from the district court on the grounds, on their motion to have this case dismissed outright rather than just stay. So you think the stay should be lifted, then? I think the stay, yes, I do, sir. I think the stay should be lifted and the case be sent back to the district court with the ---- With instruction? Yes, sir. Thank you very much. Thank you, Mr. Martin. Mr. Meth? Could you just address the last point quickly? Qualified immunity? For the attorney. Yeah. Judge, we don't believe qualified immunity exists. We don't believe there was any reasonably objective reason for the way she acted. In depositions, she admitted that over 10 years of representation, she filed one motion. She violated every single rule of the New York State Bar Association, standards for representing children in neglect and removal cases. If 10 years ago in 2003 ---- The jurisdiction over her is what? The jurisdiction over state law claims? What's the district court? She's a necessary actor and there's ancillary federal claims, so we believe that the state law claims can be heard by the federal court. They can apply state law as part of the ancillary jurisdiction when they're adjudicating the federal questions under the substantive due process. She was a main actor in the predicate towards ---- Did you just say ancillary federal claims? You mean there's state claims against her that would be supplemental jurisdiction in the district court, is that what you meant? Supplemental, not anti-policies, yes. But that's the basis for holding her in. In federal court, yeah. She was a main actor. We believe that her complete and utter non-action in every way was, you know, a major causation for where this child went. Had she gotten the expert panel together that we did all these years later, if she had gotten a certified or a comprehensive life care plan together and submitted it to the court when this child was in preventive services in 2003, let alone in 2005, we wouldn't be here. At least one of the experts in this case stated with a reasonable degree of medical certainty, in his opinion, that had an earlier comprehensive life care plan been applied to this child, then her unneeded exposure to medication would have ended, her unneeded institutionalization and her deprivation of liberty wouldn't have happened and we wouldn't be here. So we're asking you to give this child a chance. As she reaches adulthood, her childhood's gone. We can't get her back. There's nothing they can do in the family court at this point to put any service in place. She needs a comprehensive life care plan that, one, addresses her triggers so she doesn't happen in the future. She needs someone to have one-on-one daily contact with her, to socialize her correctly, to teach her things, basically, that she just never learned and to rewire her. At this point, at 17 years old, not too late, but it's moving quickly. Thank you. And just as far as why he was never appealed, he was the person representing our family court that could have filed her appeal or a motion, Mr. Martin. Stand in front of the mic while you're doing this. Sorry. Mr. Martin and his wife, Lisa Collin, could have filed these appeals. They could have filed these motions. There's at least a laundry list in this complaint of 9 or 10 or 12 different things they could have done, could have, should have, would have. We've got a 17-year-old girl right now who needs to get out of the foster care system because it has failed her utterly in every way, catastrophically. She needs to get private care to get her on her way. You're not seeking that as injunctive relief in some fashion. No, we're seeking it by way of damages. We already have, like we said, the district court has already appointed the next of friend who can handle her special education needs, help her wean off the medications and liaise with the medical community to get her in place as a caregiver, which was the purpose of bringing her into the case. And there's other people, professionals, that have already interviewed her and are in place on our side, should we be successful, to start this transition, which they should have been doing over the last two years right as she reaches 18. The county should have been transitioning her to adulthood. But there's no mention of that. They should have been transitioning her to being out of the foster care system. They've done nothing. On the jurisdiction question, and this relates to Judge Joni's question, is there a mechanism to get back to Federal court from the State proceedings? How will you, assuming the stay remains in place, you don't have anything specifically scheduled, but how would you return to Federal court for adjudication on the damages claim? If the stay remains in place, I assume on either her. Would something happen? What would happen that would trigger you going to the district judge saying, okay, it's time for us to return? Well, I read the decision based on that. I believe it would be one of two things. Either she would have to consent to sign herself out of the foster care system before she's 21 years old, right, between 18 and 21. Or she has to just turn 21, at which point the court will lose jurisdiction over her. And I guess if she's still in New Hampshire at that point, they'll just give her a ride somewhere or wish her on her way until she has her next interaction with either a police officer or mobile mental health unit or someone because she can't function out. There was a four-year period when she didn't go outside. Just to reiterate, the best we can tell, it's post-traumatic stress disorder and attention deficit disorder, right? This is failed care. She can't read. There's no mental illness diagnosis that prevents you from reading, except for low IQ or those other issues. She doesn't have those. There's no mental health diagnosis that prevents you from counting to ten. It's neglect. It's socialization. But at base, I understand those points. Just to focus on the jurisdiction question, as a practical matter then, there's no way to get back to federal district court or there is no way to get back to federal district court? There's no way that I know of short of her either consenting to get it. According to the decision, it says while the state. So I believe Judge Roman misattributed the permanency hearings. He links it to the permanency hearings. We believe that once the substantive, like you said, the look back, once it happens, nothing that can happen in the future can affect what our case is in the district court, except for the trigger now to go back and ask her, which has to be when she's out of the system or she turns 21. According to his ruling, that's the only way permanency hearings stop because she's still in the placement. And then just as a technical matter, given that, shouldn't Judge Roman have dismissed the case, even if he's, let's say he's wrong about Younger, but he had the option of dismissing in light of Younger. Right. Before he applied it. I'm sorry? What do you mean before he applied it? He could have just. No, no, no. He could have, rather than staying in the face of Younger, could he have dismissed the case in light of Younger? Yes. I believe we have a predicate constitutional tort. I believe it's been pled in detail over the 100 paragraphs in the first 20 pages of the complaint. We believe that any reasonable look at what happened to this child denies, you know, it denies logic and reason what happened to her. There were so many people along the way that could have stepped in, and they just didn't. We have to make a motion, I guess, to Judge Roman to get her placed back on the calendar once his predicate event happens, and that's why we're asking you to let this stay, remand it, send it back. Like we said, we're at summary judgment phase. The case was three hours from discovery closing when the decision came down for the stay, so we assume those three hours will come back to tidy up any issues, and then we'll move on. Thank you, Mr. Math. Thank you. Thank you all three of you. We'll reserve decision in this case, but we will try to get you a decision quickly.